CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

July 12, 2018

LETTER TO COUNSEL

RE: *Alina Kae Maddox v. Commissioner, Social Security Administration*;[1]
Civil No. SAG-17-1541

Dear Counsel:

On June 5, 2017, Plaintiff Alina Kae Maddox petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Disability Insurance Benefits. [ECF No. 1]. I have considered the parties' cross-motions for summary judgment. [ECF Nos. 17, 20]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Maddox filed her claim for benefits on March 11, 2014, alleging a disability onset date of May 23, 2013. (Tr. 220-26). Her claim was denied initially and on reconsideration. (Tr. 128-31, 136-37). A hearing was held on March 30, 2016, before an Administrative Law Judge ("ALJ"). (Tr. 30-94). Following the hearing, the ALJ determined that Ms. Maddox was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 9-29). The Appeals Council ("AC") denied Ms. Maddox's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Maddox suffered from the severe impairments of "degenerative disc disease, psoriatic arthritis/seronegative arthritis/spondyloarthritis, fibromyalgia, depression, personality disorder, post-traumatic stress disorder (PTSD)." (Tr. 14). Despite these impairments, the ALJ determined that Ms. Maddox would retain the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant was limited to standing and/or walking for four hours in an eight hour workday. Ms. Maddox could frequently climb steps or ramps, balance on a moving platform, stoop, kneel, or crawl. She could occasionally crouch, but never climb ladders,

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

>ropes, or scaffolding. The claimant was limited to no more than occasional fingering. She could frequently be exposed to extremes of cold, wetness, and humidity. However, she could not be exposed to dangerous workplace hazards, such as unprotected heights or uncovered moving industrial machinery. Additionally, she could not perform commercial driving, defined as driving requiring a commercial driver's license. Mentally, the claimant was limited to simple and routine tasks involving simple work-related decision making. She could have frequent contact with co-workers and time off-task could be accommodated by normal work breaks.

(Tr. 17). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Maddox could perform her past relevant work as a school bus monitor and, in the alternative, several other jobs existing in the national economy. (Tr. 23-24). The ALH therefore concluded that Ms. Maddox was not disabled. (Tr. 25).

Ms. Maddox raises three primary arguments on appeal: (1) that the ALJ did not provide an adequate explanation to support the limitations assessed in her RFC; (2) that the ALJ's holding runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); and (3) that the ALJ did not evaluate the opinions of her treating physician. I agree. In remanding for additional explanation, however, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Maddox is not entitled to benefits is correct.

First, Ms. Maddox argues that the ALJ failed to explain the RFC assessment, particularly the determination that her "time off-task could be accommodated by normal work breaks." Pl. Mot. 5-7. Twice in the course of the opinion, the ALJ recited certain activities of daily living that Ms. Maddox can perform, but noted that she does them "at a slower pace and while accounting for her impairment symptoms." (Tr. 19, 21). While the ALJ did not entirely find Ms. Maddox's self-reported limitations to be supported by the record evidence, the ALJ also did not expressly address the allegations relating to Ms. Maddox's slower pace of work or her need for frequent breaks or rest. *See* (Tr. 19) ("On a typical day, the claimant contends that she is up for no more than 1-2 hours at one time, before taking her medication and returning to sleep."). In the absence of any discussion of the ALJ's analysis of the alleged slower pace and need for extensive breaks, I am unable to evaluate whether the ALJ's conclusion that "normal work breaks" would suffice is supported by substantial evidence.

Ms. Maddox's second argument is somewhat related to her first. In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3)

"paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1620a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* § 404.1620a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

In the instant case, the ALJ found that Ms. Maddox had moderate difficulties maintaining concentration, persistence, or pace. (Tr. 16). The ALJ's analysis stated:

> The record additionally reflects reported restrictions with memory, completing tasks, concentration, understanding, following instructions, handling stress, and dealing with changes in routine. Nevertheless, as noted above, she retains at least some capacity to take care of personal needs, prepare small meals, complete household chores, shop for personal items, talk on the phone, communicate with Facebook, and operate a smartphone.

*Id.* According to 20 C.F.R. § 404.1520a(c)(2), the rating of "moderate difficulties" is supposed to represent the result of application of the following technique:

> We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function.

20 C.F.R. § 404.1520a(c)(2). Once the technique has been applied, the ALJ is supposed to include the results in the opinion as follows:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

*Id.* § 404.1520a(e)(4). The cursory analysis provided by the ALJ in Ms. Maddox's case fails to fulfill these requirements. Without further explanation, I am unable to ascertain whether the ALJ truly believed Ms. Maddox to have moderate difficulties in concentration, persistence, and pace, instead of mild or no difficulties, and how those difficulties restrict her RFC to "simple and routine tasks involving simple work-related decision making . . . and time off task could be accommodated by normal work breaks." (Tr. 17). Indeed, the ALJ's analysis entirely fails to address Ms. Maddox's ability to sustain work at a particular pace during an eight-hour workday, given her unaddressed assertions that her pace is slowed by her impairments. In light of this inadequacy, I must remand the case to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. On remand, the ALJ should consider the appropriate level of limitation in the area of concentration, persistence, or pace and, if a moderate limitation is again found, should explain the reasons for that finding in order to permit an adequate evaluation of the moderate limitation under the dictates of *Mascio*.

Finally, Ms. Maddox correctly notes that the ALJ did not expressly consider, and did not make any assignments of weight to, opinions rendered by her treating physician, Dr. Michael

*Alina Kae Maddox v. Commissioner, Social Security Administration*;
Civil No. SAG-17-1541
July 12, 2018
Page 5

Rezaian. Pl. Mot. 8-12. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding where the ALJ did not "explicitly indicate the weight given to all of the relevant evidence."). The ALJ did note that "the record reflects a history of outpatient treatment for complaints of pain" with Dr. Rezaian, but did not otherwise address the opinions he proffered. (Tr. 19). Although the SSA suggests that Dr. Rezaian's opinions are either consistent with the RFC assessment or opinions on issues reserved to the SSA, Def. Mot. 9-10, those analyses should be conducted by the SSA, and not by this Court in the first instance. Thus, on remand, the ALJ should evaluate Dr. Rezaian's opinions and should make appropriate assignments of weight.[2]

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 17), is DENIED, and Defendant's Motion for Summary Judgment, (ECF No. 20), is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

[2] Though not an argument expressly presented by the parties, I note that the ALJ's conclusion that Ms. Maddox could perform her past relevant work as a school bus monitor, (Tr. 23), did not appear to consider her moderate limitations in social functioning. The ALJ limited her to only "frequent contact with co-workers" but did not address any limits to interaction with the general public or, more specifically, schoolchildren.